1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7

8    RICHARD L.,

9                              Plaintiff,            Case No. C23-5355-SKV

10           v.                                      ORDER REVERSING THE
                                                     COMMISSIONER'S DECISION
11    COMMISSIONER OF SOCIAL SECURITY,

12                              Defendant.

13

14       Plaintiff seeks review of the denial of his application for Supplemental Security Income

15   (SSI) and Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the

16   administrative record (AR), and all memoranda of record, the Court **REVERSES** the

17   Commissioner's final decision and **REMANDS** the matter for further administrative proceedings

18   under sentence four of 42 U.S.C. § 405(g)

19                                    **BACKGROUND**

20       Plaintiff was born in 1984, has a high school education, and has past relevant work as a

21   line installer, floor worker, iron worker, supervisor carpet installer, roofer, and general laborer.

22   AR 25-26.  Plaintiff was last gainfully employed in October 2018.  AR 18.

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

In September 2019, Plaintiff applied for benefits, alleging disability as of October, 2018. AR 262-63, 270-75.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 85-144.  After the ALJ conducted a hearing in December 2021, the ALJ issued a decision finding Plaintiff not disabled.  AR 12-34.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since October 2, 2018, the alleged onset date, through July 14, 2021, the end of the requested closed period of review.

**Step two**:  Plaintiff has the following severe impairments:  depressive disorder, anxiety, opioid use disorder, amphetamine-type substance abuse disorder, alcohol use disorder, and a medial meniscal tear/ACL tear of the left knee.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**:  Plaintiff can perform light work with some limitations:  he could stand or walk for up to 2 hours in an 8-hour workday; could occasionally stoop, crouch, use ramps, and climb stairs; could tolerate occasional exposure to vibrations; must avoid balancing, kneeling, crawling, and climbing ladders, ropes, or scaffolding; cannot be exposed to wet or slippery conditions and workplace hazards, such as unprotected heights and moving machinery; cannot perform jobs involving pushing and pulling with the left lower extremity, including operating pedals and foot controls; could perform generally unskilled jobs taking no more than 30 days to learn; could understand, remember, and carry out simple instructions; could perform simple and routine tasks; could perform "low stress" jobs with occasional, simple decision-making, and occasional, gradual changes in work duties and settings; could have occasional interaction with coworkers and supervisors; and could have no more than rare or incidental contact with customers and the public.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 18, 20-21, 25-26.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

1    The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

2   Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the

3   Commissioner to this Court.  Dkt. 4.  The parties consented to proceed before the undersigned

4   Magistrate Judge.  Dkt. 2.

5                                    **LEGAL STANDARDS**

6    Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

7   security benefits when the ALJ's findings are based on harmful legal error or not supported by

8   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

9   2005).  As a general principle, an ALJ's error may be deemed harmless where it is

10  "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,

11  1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to

12  determine whether the error alters the outcome of the case."  *Id.*

13   Substantial evidence is "more than a mere scintilla.  It means - and means only - such

14  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

15  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

16  747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

17  conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.

18  Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

19  as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

20  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

21  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

22  must be upheld.  *Id.*

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

**DISCUSSION**

Plaintiff argues that the ALJ erred in determining his RFC and failed to meet the burden of showing that a significant number of jobs exist in the national economy at step five of the sequential evaluation process. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

A.      **The ALJ Did Not Err in RFC Determination**

Plaintiff argues that the ALJ's RFC finding did not adequately account for his moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Dkt. 10 at 16. An RFC must include all of the functional limitations supported by the record. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Commissioner is responsible for "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

Despite challenging the ALJ's RFC formulation, Plaintiff does not contest the ALJ's evaluation of the objective evidence and medical opinions, nor does he dispute the ALJ's assessment of his testimony. Instead, Plaintiff suggests that his limitations, combined with his knee surgeries, imply some impairment in his ability to remain on task and persist throughout a workday. Dkt. 10 at 16. This argument is speculative at best and appears to be an attempt to present a more favorable interpretation of the evidence. Such speculation does not establish reversible error. The Court will not "second-guess" the ALJ's findings when they are supported by substantial evidence in the record. *See, e.g.*, *Thomas*, 278 F.3d at 959; *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**B.      The ALJ Erred in Step Five Analysis**

The Vocational Expert (VE) testified that Plaintiff could perform three occupations: (1) document preparer, with 25,000 jobs; (2) stuffer, with 20,000 jobs; and (3) assembler, with 30,000 jobs.  AR 72-73.  The ALJ found the VE's job information reliable based on the VE's "education, knowledge, and experience in this field," noting the VE's expertise in "correlating job descriptions as they appear in the [Bureau of Labor Statistics (BLS)] publications with jobs described in the [Dictionary of Occupational Titles (DOT)] codes."  AR 28.  Plaintiff disputes the VE's job numbers, Dkt. 10 at 5-17,[3] arguing that the evidence shows far fewer jobs exist: (1) 1,522 assembler jobs, not 30,000; and (2) 1,665 stuffer jobs, not 20,000.  AR 361-77.  The Commissioner counters that Plaintiff has not demonstrated that he replicated the VE's methodology.  Dkt. 19 at 4.

Having reviewed the VE's hearing testimony, the Court finds no clear explanation of how the VE arrived at the figures of 20,000 and 30,000.  AR 68-83.  Both parties assert that the VE relied on SkillTRAN's transferability skills program to support his testimony, Dkt. 10 at 9, Dkt. 19 at 4-5, but the record shows the VE derived his job numbers by identifying the DOT descriptor and "taking a look at the different sources that may be out there."  AR 80.  Although the VE acknowledged familiarity with the program in response to Plaintiff's questions about methodology, he did not state that he relied on it for his testimony.  AR 80-81.  Since the VE did

---

[3] Plaintiff also argues that the ALJ erred by finding him capable of performing work as a document preparer, noting conflict between work with level three reasoning and Plaintiff's limitation to "simple instructions" and "simple, routine tasks."  The Commissioner does not expressly concede error to this point, instead broadly asserting that "any error in the ALJ's reliance on that job is harmless."  Dkt. 19 at 2, n.1.  This conclusory statement is insufficient to preserve the Commissioner's arguments on appeal. *See Jeffrey C. v. Kijakazi*, 2023 WL 4760603, at *3 (D. Or. July 26, 2023) (concluding that the Commissioner waived an argument by failing to raise it in its answering brief); *Stephanie R. v. Kijakazi*, 2022 WL 959222, at *3 (D. Or. Mar. 30, 2022); *cf. United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015); *United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011).

1   not clearly identify his methodology for deriving job numbers, Plaintiff cannot be faulted for not

2   replicating it.  The issue, therefore, is more appropriately framed as whether Plaintiff's post-

3   hearing evidence was sufficiently "probative" to trigger a duty of reconciliation.

4          The ALJ's duty to address conflicting job numbers "arises only where the purportedly

5   inconsistent evidence is both significant and probative." *Wischmann v. Kijakazi*, 68 F.4th 498,

6   505-06 (9th Cir. 2023).  Although a VE's testimony is "inherently reliable," it is "not

7   incontestable." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017).  The Court considers "on

8   a case-by-case basis whether new evidence submitted by a claimant is 'meritless or immaterial'

9   or has 'significant probative' value." *Wischmann*, 68 F.4th at 506.  The substantial evidence

10  inquiry for VE testimony considers "all features of vocational expert's testimony, as well as the

11  rest of the administrative record." *Biestek*, 139 S. Ct. at 1157.  Where a "vast discrepancy

12  between the VE's job numbers and those tendered by [Plaintiff] is simply too striking to be

13  ignored[,]" such "inconsistency in the record must be addressed by the ALJ." *White v. Kijakazi*,

14  44 F.4th 828, 835 (9th Cir. 2022).

15         In this case, Plaintiff cross-examined the VE regarding his methodology, specifically

16  objected to the VE's job numbers at the hearing, and presented conflicting Job Browser Pro

17  reports along with a detailed explanation of the methodology used to generate the job numbers.

18  AR 81-83, 361-77.  Plaintiff's evidence was produced using a data source and methodology

19  frequently relied on by the Commissioner.  *See White*, 44 F.4th at 837; *Kilpatrick v. Kijakazi*, 35

20  F.4th 1187, 1194 (9th Cir. 2022); *see also Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018)

21  ("SkillTRAN's software has been recognized … to be widely relied upon by vocational experts

22  in estimating the number of relevant jobs in the national economy."); *Chavez v. Berryhill*, 895

23  F.3d 962, 966-71 (7th Cir. 2018) (ALJ's decision was not supported by substantial evidence

1    where the ALJ failed to address discrepancy between job estimates obtained via the equal

2    distribution method and job numbers obtained from Job Browser Pro).

3           Plaintiff's job estimates—using SkillTRAN's Job Browser Pro and the same DOT codes

4    as the VE—indicate 1,522 final assembler and 1,665 stuffer jobs in the national economy.[4]  AR

5    364-67.  The VE testified to 30,000 and 20,000 jobs in these same occupations, respectively.  AR

6    73.  The discrepancy between these estimates is comparable to the discrepancy in *White*.  *See* 44

7    F.4th at 837.  Applying *White*, the Court holds that remand is appropriate to allow the ALJ to

8    address the evidence and resolve the inconsistencies between the job number estimates provided

9    by Plaintiff and by the VE.

10
<b>CONCLUSION</b>

11           For the reasons set forth above, the Commissioner's final decision is **REVERSED** and

12    this case is **REMANDED** for further administrative proceedings under sentence four of 42

13    U.S.C. § 405(g).  On remand, the ALJ shall address the inconsistencies between the job number

14    estimates provided by the Plaintiff and by the VE and proceed to the remaining steps of the

15    disability evaluation process as appropriate.

16           Dated this 12th day of August, 2024.

17

18    S. KATE VAUGHAN
           United States Magistrate Judge

19

20

21

22

23    [4] The VE used the following DOT codes: (1) stuffer, with the code of 731.685-014; and (2) assembler, with the code of 713.687-018.  AR 73.  Plaintiff used the same codes in his report: (1) stuffer, with the code of 731.685-014; and (2) assembler, with the code of 713.687-018.  AR 364, 366.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7